In re Edward and Margie **WILHITE, Relators.**

No. 01–09–00387–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 25, 2009.

---

1. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 933 (Tex.1998), *cert. denied*, 526 U.S. 1144, 119 S.Ct. 2018, 143 L.Ed.2d 1030 (1999).

James David Walker, Milano, TX, for Relators.

Clay M. White, White & Shaver, Tyler, TX, Juan Carlos Tomasino, Schachter Harris, LLP, L. Amy Green, Hunton & Williams, LLP, Joseph Blizzard, Andrews Kurth, LLP, Robert E. Thackston, Hawkins, Parnell & Thackston, L.L.P, Todd D. Ogden, Forman Perry Watkins Krutz & Tardy, LLP, Dallas, TX, Lisa A. Powell, Jackson & Walker, L.L.P., Houston, TX, Robert Wilkinson, Dogan & Wilkinson PLLC, Pascagoula, MS, for Real Party in Interest.

Panel consisted of Justices JENNINGS, ALCALA, and HIGLEY.

## OPINION

ELSA ALCALA, Justice.

In this petition for writ of mandamus, relators, Edward and Margie Wilhite, contend that the Honorable Edward P. Magre, judge of the 20th Judicial District Court in Milam County, Texas, is disqualified from presiding over the underlying asbestos lawsuit filed against defendant Alcoa, Inc., the real party in interest. The Wilhites assert that the multidistrict pretrial court[1] erroneously denied their motion to disqualify Judge Magre because his previous law firm represented Alcoa over a decade ago in two similar asbestos lawsuits.[2] Although there are similarities between the lawsuit filed by the Wilhites and the two lawsuits where the law firm represented Alcoa a decade ago, the specifics fail to show that the litigations concern the same matter in controversy. We therefore deny the petition for writ of mandamus.

## Background

Although he did not personally represent Alcoa, Judge Magre was a partner at Ellet, Camp, Magre & Glasser, P.C. (the "law firm") when the law firm twice represented Alcoa in suits filed against it for injuries caused by exposure to asbestos. The law firm represented Alcoa in 1996 in a lawsuit for damages brought by the estate of Glen Whatley, who died from mesothelioma. Whatley asserted that he was exposed to asbestos while working as a pipefitter and insulator at the Alcoa Rockdale plant from 1954 to 1990. According to the pleadings in the Whatley lawsuit, Alcoa failed to provide adequate safety measures to protect against asbestos dust, Alcoa knew of the extreme risk of harm inherent to asbestos exposure, Alcoa failed to warn its employees about the hazards of asbestos exposure, Alcoa failed to ensure a safe work environment, and Alcoa intentionally caused the mesothelioma. Although he pleaded that Alcoa caused his injuries, Whatley dismissed Alcoa from the lawsuit for reasons not shown in the documents before us. The documents do show, however, that Whatley testified in his deposition that he believed he was also exposed to asbestos when he worked for two other companies before Alcoa.

---

1. *See* TEX.R. JUD. ADMIN. 13; TEX. GOV'T CODE ANN. §§ 74.161–.164 (Vernon Supp. 2008).

2. The underlying lawsuit is titled *Edward Wilhite Individually and Margie Wilhite, Individually, v. Able Supply Co., Alcoa, Inc., Ametek, Inc., Aqua–Chem, Inc., A.W. Chesterton Co., Certainteed Co., Coltec Industries, Inc., Garlock Inc., Garlock Sealing Technologies, LLC, Guard–Line, Inc., LGS Technologies, LP, Rapid American Co., Sepco Co., and Uniroyal Holding, Inc.,* No. 2008–15687, in the 11th Judicial District Court of Harris County, Texas, the Hon. Mark Davidson, presiding. The Wilhites filed the underlying lawsuit in Dallas County Court at Law Number 2, and it was transferred to the multidistrict pretrial court for pretrial proceedings. The pretrial court granted Alcoa's motion to transfer venue to Milam County and set a trial date. The Wilhites then moved to disqualify Judge Magre, who declined to remove himself from presiding over the case.

The law firm again represented Alcoa in 1997 in a lawsuit resulting in a two million dollar judgment against Alcoa for damages for Bernice Cavitt's asbestos-related lung cancer. Bernice was exposed to asbestos by laundering the clothes worn by her husband, Floyd, who worked at the Alcoa Rockdale plant from 1953 to the early 1980s as a "potliner," carbon setter, and crane operator. The defense at the Cavitt's trial was that Bernice's lung cancer was caused by exposure to Floyd's cigarette smoking for over five years; that there was no asbestosis diagnosis; and that there were alternative sources of exposure to asbestos.

Like the Whatley and Cavitt lawsuits, the present lawsuit against Alcoa also concerns allegations of exposure to asbestos at Alcoa's Rockdale plant during the same period of time. The Wilhite pleadings assert Edward worked at that plant from 1955 to 1982 in the "potrooms" performing "many different tasks."

After Edward was diagnosed with malignant pleural mesothelioma in 2007, the Wilhites filed suit the following year against Alcoa and numerous other defendants. Like the Whatley lawsuit, the Wilhite pleadings assert Edward was injured by Alcoa's failure to provide adequate safety measures to protect against asbestos dust, that Alcoa knew of the extreme risk of harm inherent to asbestos exposure, that Alcoa failed to warn its employees about the hazards of asbestos exposure, that Alcoa failed to ensure a safe work environment, and that Alcoa's intentional acts caused the mesothelioma.

### Applicable Law

■ Mandamus relief is proper when a trial court erroneously denies a motion to disqualify. *See In re O'Connor*, 92 S.W.3d 446, 450 (Tex.2002). An erroneous ruling on a recusal, however, has historically not been addressed by mandamus relief, but rather by direct appeal after the rendition of a final, appealable judgment. *In re Union Pac. Res. Co.*, 969 S.W.2d 427, 428 (Tex.1998).

■ In Texas, a judge may be removed from a case because he is constitutionally disqualified, subject to a statutory strike, or recused. *See id.* The grounds and procedures for each type of removal are fundamentally different. *Id.* The pertinent standard for recusal is that a "judge shall recuse himself in any proceeding in which: (a) his impartiality might reasonably be questioned." *See* Tex.R. Civ. P. 18b(2). Recusal must be preserved for appeal or it is waived. *Buckholts Indep. School Dist. v. Glaser*, 632 S.W.2d 146, 148 (Tex.1982); *McElwee v. McElwee*, 911 S.W.2d 182, 185–86 (Tex.App.-Houston [1st Dist.] 1995, writ denied). In contrast to recusal, "any orders or judgments rendered by a judge who is constitutionally disqualified are void and without effect." *In re Union Pac. Res. Co.*, 969 S.W.2d at 428.

■ In establishing the grounds for judicial disqualification, the Texas Constitution states, "No judge shall sit in any case ... when the judge shall have been counsel in the case." Tex. Const. art. V, § 11. Judicial disqualification is also addressed in the Texas Rules of Civil Procedure, which provide that,

> Judges shall disqualify themselves in all proceedings in which: (a) they have served as a lawyer in the matter in controversy, or a lawyer with whom they previously practiced law served during such association as a lawyer concerning the matter . . . .

Tex.R. Civ. P. 18b(1)(a). Rule 18b(1)(a)'s reference to the "same matter in controversy" is synonymous with the Texas Constitution's reference to "the case." *Tesco*

*Am., Inc. v. Strong Indus., Inc.,* 221 S.W.3d 550, 553 (Tex.2006) (rule 18b(1)(a) "was intended to *expound* rather than *expand* the Constitution"); *Slaven v. Wheeler,* 58 Tex. 23, 25 (1882).

The same "matter in controversy" must be involved, regardless of whether the same lawsuit is involved. *In re O'Connor,* 92 S.W.3d at 449. As the Supreme Court of Texas states,

> By its own terms, rule 18b(1)(a) is not limited to disqualifying a trial judge only when the "same lawsuit" is involved. Rather, in plain language, rule 18b(1)(a) requires disqualification when the same "matter in controversy" is involved.

*Id.* (citing Tex.R. Civ. P. 18b(1)(a)). The assessment of whether a matter in controversy is similar or the same must be performed with great care, as noted by the Supreme Court of Texas:

> Where the constitution has only prescribed that the judge's professional connection with the case, in the single instance where he has been "of counsel in the cause," shall disqualify him from presiding upon its trial, we cannot undertake to say that his professional connection with a similar cause or one involving the same questions shall have that effect. If we depart from the plain language of the constitution, we shall be left without a rule for our guidance, and shall countenance a laxity of construction that may prove both dangerous and inconvenient.

*Taylor v. Williams,* 26 Tex. 583, 586–87 (1863).

In summary, a judge is disqualified when two prongs are met: first, the judge or the judge's law firm was the attorney for a party in the case, and second, the matter before the judge is the same matter that was before the judge or judge's law firm. *See In re O'Connor,* 92 S.W.3d at 448. A judge will not be disqualified if only prong one applies. *City of Austin v. Cahill,* 99 Tex. 172, 89 S.W. 552, 552 (1905) (judge who has previously represented one party currently before him on different matter is not disqualified.). Nor will a judge be disqualified if only prong two applies. *See Glasscock v. Hughes,* 55 Tex. 461, 468–69 (1881) (fact that judge has "been connected as counsel at one period with the matters, or a portion of them" does not disqualify him); *Matlock v. Sanders,* 273 S.W.2d 956, 957–58 (Tex.Civ.App.-Beaumont 1954, no writ) (judge not disqualified even if, as attorney, he previously gave his opinion in regard to validity of title to land in controversy before him, when controversy concerns different parties than any of those previously represented by judge); *Butts v. Davis,* 149 S.W. 741, 742 (Tex.Civ.App.-Amarillo 1912, no writ) (judge who "long prior to the institution of the suit" had rendered legal advice on similar matter to lawsuit he currently presided over should not be disqualified because it "in no way involved this action."). Therefore, both prongs must be present for a judge to be disqualified.

If the record shows a judge or his prior law firm represented a party in the same matter in controversy, the judge is disqualified, even if he did not personally participate in the representation. *See State ex rel. Routh v. Burks,* 82 Tex. 584, 585, 18 S.W. 662, 662 (1891). An attorney's knowledge about a matter is "imputed by law to every other attorney in the law firm." *Nat'l Med. Enters., Inc. v. Godbey,* 924 S.W.2d 123, 131 (Tex.1996). Although he did not personally participate in the law firm's representation of Alcoa, Judge Magre is vicariously disqualified from sitting in the Wilhite lawsuit if the law firm represented Alcoa in the same matter in controversy presented in this case. *See In re O'Connor,* 92 S.W.3d at 448. Our decision in this case, thus, turns

on whether this litigation is the same matter in controversy as the Cavitt and Whatley lawsuits.

## Analysis

■ The Wilhites contend their present lawsuit involves the same matter in controversy as the Whatley and Cavitt lawsuits because they all involve claims of asbestos exposure at the Alcoa Rockdale plant during the same period of time and the lawsuits share some of the same evidence. The Wilhites intend to use the deposition of Thomas Bonney, Alcoa's former senior industrial hygienist, that was originally taken in the Whatley case in 1998, as well as several other depositions taken in that case. Bonney testified that asbestos use at the Rockdale plant was "ubiquitous" and that Alcoa did not tell its employees about the dangers of asbestos exposure. The Wilhites also plan to use the deposition of Jack Clark, a former brick mason at the Alcoa Rockdale plant from 1952 to 1978, that was taken in the Cavitt lawsuit. Furthermore, the Wilhites contend their present lawsuit involves similar liability theories: that, in each case, the plaintiffs acquired an asbestos-related disease as a result of exposure to asbestos; and similar defenses: whether asbestos exposure poses a health risk, when Alcoa knew that asbestos exposure posed a health risk, and whether third parties or the plaintiff himself caused his injuries.

Although the Wilhites accurately show that their lawsuit shares with the prior lawsuits some of the evidence, liability theories, and defenses, these similarities are insufficient to show that these three law suits are the same matter in controversy. First, the plaintiffs in these three cases are complete strangers, not legally joined in their lawsuits in any way. Each of these plaintiffs is suing for his or her own personal injury, unrelated to the injuries sought by the other plaintiffs.

Second, nothing in the documents before us shows that the injuries arose from the same incident or the same exposure to asbestos. The record shows, at most, that the plaintiffs are suing the same defendant for injuries caused by asbestos exposure at the same general location during the same period of time, but the documents do not show that these injuries arise from the same incident or the same exposure. The Cavitts' lawsuit, which concerns Bernice's exposure from washing her husband's clothes following his shifts at the Rockdale plant, plainly does not involve the same incident or same exposure as the present lawsuit that alleges direct exposure to asbestos while Wilhite worked in the potrooms.

The Whatley and Wilhite cases are dissimilar in that the pleadings in the Whatley case assert the exposure occurred during work as a pipefitter and insulator, and the pleadings in the Wilhite case assert the exposure occurred during work in the potrooms. The documents do not show whether the employees in the Wilhite and Whatley lawsuits worked at the same or a similar part of the plant, did the same or similar type of job, or were exposed to the same or similar substance.

Third, an examination of the identities of the other defendants sued in addition to Alcoa in each of the three lawsuits suggests the liability theories and defenses would be different in each of the litigations. Of the ten defendants sued by the Whatleys and 14 defendants sued by the Wilhites, the only two defendants they share in common are Aluminum Company of America (Alcoa's predecessor company) and Alcoa Power Marketing, Inc. Of the 35 defendants sued by the Cavitts, only six defendants are in common with the Wilhites: Aluminum Company of America;

Alcoa Power Marketing, Inc.; Garlock Inc.; Guard–Line Inc.; Rapid–American Corporation Corp.; and Uniroyal Holding, Inc. This lack of commonality in the named defendants suggests these are not the same cases because the specific liability theories and defenses will be different in light of the differences in the parties involved in each of the lawsuits. Moreover, because the record does not show why Whatley dismissed his lawsuit, the dismissal raises the question whether Whatley could prove his liability theory that Alcoa caused his injury, further showing that the Whatley lawsuit is different from the present lawsuit that asserts Alcoa caused the injuries claimed in the Wilhite suit.

Fourth, these same pleadings and defenses can likely be found in hundreds, if not thousands, of lawsuits in Texas against Alcoa and other companies. The issue is not whether the cases have the same or similar pleadings, but rather whether they are the *same* matters.

Fifth, the present situation is completely unlike the situation that required disqualification in *O'Connor*. *See In re O'Connor*, 92 S.W.3d at 447–48. O'Connor challenged the judge because the judge's law firm had represented her against her ex-husband when temporary orders concerning custody of her child were made. *Id.* The Supreme Court of Texas held that the judge presiding over the modification proceeding was disqualified because the modification proceeding concerned the same matter in controversy—namely the custody, visitation, and right to determine the child's residence. *Id.* at 449. In *O'Connor*, the lawsuits were continuing disputes between the same plaintiff and same defendant over the exact same subject. *Id.* at 447–48. Here, the situation is like *O'Connor* in that one of the parties then is

the same as one of the parties now. But this situation is unlike *O'Connor* because

- the plaintiffs are each suing for separate injuries unrelated to each other;
- the record does not show that the plaintiffs worked at the same part of the plant, did the same (or even similar) type of job for the defendant, or were injured by the same (or even similar) type of exposure to asbestos;
- in addition to suing Alcoa, the plaintiffs each sued different defendants, which means each of the lawsuits concerns different liability theories and defenses, and
- this is not a continuing dispute between the same plaintiff and same defendant over a series of lawsuits concerning the exact same subject, such as custody of the same child.

*See id.* Though there are general similarities between the Cavitt, Wilhite, and Whatley matters, the specifics fail to show that the litigations concern the same matter in controversy.

The dissenting opinion relies on the federal rule for disqualification, but that rule is different from the Texas standard for disqualification because, unlike Texas, the federal rule includes disqualification for the appearance of impropriety. As the Supreme Court has stated, "Title 28 U.S.C. 455 provides in relevant part: '(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.'" *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 858, 108 S.Ct. 2194, 2202, 100 L.Ed.2d 855 (1987). This part of the *federal rule for disqualification* matches the *Texas rule for recusal* that states that a "judge shall recuse himself in any proceeding in which: (a) his impartiality might reasonably be questioned." *See* Tex.R. Civ. P. 18b(2). Because federal cases dis-

cussing recusal and disqualification often use the terms interchangeably, those cases are of limited guidance in interpreting Texas's rule for disqualification that does not include the appearance of impropriety as a basis for disqualification. *See, e.g., In re Chevron U.S.A., Inc.*, 121 F.3d 163, 165 (5th Cir.1997); *Health Servs. Acquisition Corp. v. Liljeberg*, 796 F.2d 796, 802 (5th Cir.1986); William W. Kilgarlin & Jennifer Bruch, *Disqualification and Recusal of Judges*, 17 St. Mary's L.J. 599, 601, 652 (1986).

■■■ If we were to determine Judge Magre was disqualified under the facts presented, that decision would place every future judgment in peril because none of those judgments will be final until a party, post-judgment, conducts a full investigation for similarities between the present lawsuit and any lawsuits handled by the judge's prior law firm. A party could litigate all the facts at trial and say nothing about any concerns he may have about the judge's law firm's prior representation of one of the parties in the lawsuit. After receiving an unfavorable judgment, the losing party could then compare all the facts of his present lawsuit to all the cases of all the prior lawsuits handled by the judge and all the law firms where the judge previously worked to see what similarities factually exist. If, within the decades of the time when the judge was an attorney, the judge's law firm represented a defendant in a case with the same general subject matter for the same general complaint, all the actions taken by the judge would be void. For example, assuming a future plaintiff won a substantial verdict, the unhappy defendant could conduct discovery into the judge's prior law firm's clients over decades of time to find similarly situated plaintiffs who sued the same defendants and make all the judge's actions void. An unhappy future plaintiff faced with a take-nothing judgment could act similarly to avoid the judgment. The concept of a final judgment would become a thing of the past. Judges should not remove themselves from cases "where disqualification would put power in the hands of litigants to frustrate our judicial system." *Gaines v. Gaines*, 677 S.W.2d 727, 731 (Tex.App.-Corpus Christi 1984, no writ).

Departure from "the plain language of the constitution" would prove to be "dangerous" and leave courts "without a rule" for guidance. *See Taylor*, 26 Tex. at 586–87. We hold the general similarities between the Cavitt, Wilhite, and Whatley matters are insufficient to show that the litigations concern the same matter in controversy. We note that the Wilhites have not moved to recuse Judge Magre, and thus we express no opinion on the matter of recusal.

### Conclusion

We deny the petition for mandamus.

En banc consideration was requested. Tex.R.App. P. 41.2(c).

A majority of the justices of the Court voted in favor of considering the case en banc.

The en banc court consists of Chief Justice RADACK and Justices JENNINGS, KEYES, ALCALA, HANKS, HIGLEY, BLAND, SHARP, and MASSENGALE.

Justice ALCALA, writing for the majority of the en banc court, joined by Chief Justice RADACK and Justices KEYES, HANKS, BLAND, and MASSENGALE.

Justice JENNINGS, dissenting, joined by Justices HIGLEY and SHARP.

**TERRY JENNINGS, Justice,** dissenting.

The En Banc Court holds that a trial judge is not disqualified from sitting in an asbestos exposure case in which the defendant is represented by the judge's former law firm even though the firm had, when the judge was a partner there, represented the same defendant in an asbestos exposure case involving the same facility, the same time period, and similar allegations, defenses, and issues.

The Texas Constitution commands that no judge shall sit in any case in which a lawyer, with whom the judge previously practiced law, served, during the time of their association, as a lawyer in the same matter in controversy. *See* TEX. CONST. art. V, § 11; TEX.R. CIV. P. 18b(1)(a); *Tesco Am., Inc. v. Strong Indus., Inc.,* 221 S.W.3d 550, 553 (Tex.2006); *In re O'Connor,* 92 S.W.3d 446, 448 (Tex.2002). The Texas Supreme Court has clearly explained that the Texas Constitution requires the vicarious disqualification of judges because an attorney's knowledge about a matter is "imputed by law to every other attorney in [his] firm." *Nat'l Med. Enters., Inc. v. Godbey,* 924 S.W.2d 123, 131 (Tex.1996). Moreover, it has also clearly explained that constitutional disqualification is required when the "same matter in controversy" is involved, not only when the exact same lawsuit is involved, *O'Connor,* 92 S.W.3d at 449, i.e., not only when, as suggested by the En Banc Court, the pertinent plaintiffs are not "strangers" to each other and are "legally joined in their lawsuits," their injuries arise out of the exact same incident, and they sue the same co-defendants.

Here, by a petition for writ of mandamus, relators, Edward and Margie Wilhite, challenge the multidistrict pretrial court's [1] order denying their motion to disqualify the trial court judge, the Honorable Edward P. Magre, from sitting in the underlying lawsuit.[2] The Wilhites contend that Judge Magre is disqualified from presiding over the underlying lawsuit because his former law firm, Ellet, Camp, Magre & Glasser, P.C. (the "law firm"), represented the real party in interest, Alcoa, in two similar asbestos lawsuits while Judge Magre was a partner at the law firm. Because the underlying lawsuit and one of the asbestos lawsuits in which the law firm provided counsel involve the same matter in controversy, I would conditionally grant mandamus relief. Accordingly, I respectfully dissent.

### Background

Over a decade ago, Judge Magre was a partner at the law firm along with attorney Emory Camp. While Judge Magre worked at the firm, Camp, on behalf of the firm, twice represented Alcoa, the defendant in the underlying lawsuit. Judge Magre was not personally involved in either matter. The law firm first represented Alcoa in 1996, when the estate of former Alcoa employee, Glenn Whatley, sued a variety of defendants, including Alcoa, for negligently exposing him to asbestos at Alcoa's plant in Rockdale, Texas. In that lawsuit, the plaintiffs alleged that Whatley developed mesothelioma after Alcoa and

---

1. *See* TEX.R. JUD. ADMIN. 13; TEX. GOV'T CODE ANN. §§ 74.161–.164 (Vernon Supp. 2008).

2. The underlying lawsuit is titled *Edward Wilhite Individually and Margie Wilhite, Individually, v. Able Supply Co., Alcoa, Inc., Ametek, Inc., Aqua–Chem, Inc., A.W. Chesterton Co.,*

*Certainteed Co., Coltec Industries, Inc., Garlock Inc., Garlock Sealing Technologies, LLC, Guard–Line, Inc., LGS Technologies, LP, Rapid American Co., Sepco Co., and Uniroyal Holding, Inc.,* No. 2008–15687, in the 11th Judicial District Court of Harris County, Texas, the Hon. Mark Davidson, presiding.

the other defendants exposed him to asbestos dust. Alcoa was later dismissed from the lawsuit. The law firm next represented Alcoa in 1997, when Bernice and Floyd Cavitt sued Alcoa and other defendants. The Cavitts alleged that Bernice developed mesothelioma after being exposed to asbestos by her husband, Floyd Cavitt, who had been negligently exposed to asbestos while working for Alcoa at an unspecified plant. The Cavitts obtained a $2.11 million judgment against Alcoa.

In 2008, the Wilhites brought the underlying lawsuit, alleging that Alcoa and other defendants negligently exposed Edward to asbestos when he worked at Alcoa's Rockdale plant. The Wilhites filed the underlying lawsuit in Dallas County Court at Law Number 2, and it was transferred to the multidistrict pretrial court for pretrial proceedings. The pretrial court granted Alcoa's motion to transfer venue to Milam County and set a trial date. The Wilhites then moved to disqualify Judge Magre on the ground that when he was a partner at the law firm, the firm had represented Alcoa in the Whatley and Cavitt lawsuits, which involve the same matter in controversy.

The multidistrict pretrial court, after confirming that Judge Magre would not remove himself from sitting in the case, denied the Wilhites' motion to disqualify Judge Magre. At the hearing on the motion, the multidistrict pretrial court, after overruling Alcoa's hearsay objections concerning the Wilhites' evidence, concluded that the underlying lawsuit differs factually from the Whatley and Cavitt lawsuits.

### Constitutional Disqualification

The Wilhites argue that Judge Magre, in accordance with the Texas Constitution and the Texas Rules of Civil Procedure, is vicariously disqualified from sitting in the case because the Whatley and Cavitt lawsuits, in which Camp served as counsel for Alcoa, share the same issues with and concern the same matter in controversy as the underlying lawsuit. *See* TEX. CONST. art. V, § 11; TEX.R. CIV. P. 18b(1)(a). Alcoa argues that Judge Magre should continue to preside over the case because the three suits concern different matters in controversy.

Mandamus relief is proper when a trial court erroneously denies a motion to disqualify. *See In re O'Connor,* 92 S.W.3d at 450. In Texas, a judge may be removed from a case because he is constitutionally disqualified, subject to a statutory strike, or recused. *See In re Union Pac. Res. Co.,* 969 S.W.2d 427, 428 (Tex.1998). The grounds and procedures for each type of removal are fundamentally different. *Id.* Here, the issue is one concerning only the disqualification of Judge Magre.

Unlike statutory recusal, disqualification cannot be waived, and may be raised at any time. *McElwee v. McElwee,* 911 S.W.2d 182, 186 (Tex.App.-Houston [1st Dist.] 1995, orig. proceeding). "[I]f an error is ever made as to disqualification, it should be in favor of the disqualification rather than against it." *Cotulla State Bank v. Herron,* 202 S.W. 797, 798 (Tex. Civ.App.-San Antonio 1918, no writ).

The Texas Constitution, which establishes the grounds for judicial disqualification, provides, in relevant part, that "[n]o judge shall sit in any case ... when the judge shall have been counsel in the case." TEX. CONST. art. V, § 11. Judicial disqualification is also addressed in the Texas Rules of Civil Procedure, which provide that

> Judges shall disqualify themselves in all proceedings in which:
>
> > (a) they have served as a lawyer in the matter in controversy, or a lawyer with whom they previously practiced

law served during such association as a lawyer concerning the matter.... TEX.R. CIV. P. 18b(1)(a). Rule 18b(1)(a) "was intended to *expound* rather than *expand* the Constitution." *Tesco Am.*, 221 S.W.3d at 553. Consequently, "the case," as referenced in the Texas Constitution, is synonymous with the "same matter in controversy," referenced in Rule 18b(1)(a). *See id.*; *Slaven v. Wheeler*, 58 Tex. 23, 25 (1882).

Vicarious disqualification is explicitly required under Rule 18b(1)(a). *Tesco Am.*, 221 S.W.3d at 553–54. Although the Texas Constitution does not expressly mention vicarious disqualification, it, *too*, requires vicarious disqualification. *Id.* As explained by the Texas Supreme Court, an attorney's knowledge about a matter is "imputed by law to every other attorney in the firm." *Nat'l Med. Enters.*, 924 S.W.2d at 131. When considering disqualification, it is irrelevant if the judge, while an attorney, had no part in the civil litigation pending before him if he had been a member of the law firm that gave counsel as to the pending litigation.[3] *See State v. Burks*, 82 Tex. 584, 585, 18 S.W. 662, 662 (1891).

Thus, under Texas law, a judge is constitutionally disqualified when (1) the judge or the judge's law firm was the attorney for a party in the case, and (2) the matter before the judge is the same matter that was before the judge or judge's law firm. *See In re O'Connor*, 92 S.W.3d at 448 (citing *Lade v. Keller*, 615 S.W.2d 916, 920 (Tex.Civ.App.-Tyler 1981, no writ)) ("[I]t is necessary that the judge acted as counsel for some of the parties in [the] suit before him in some proceeding in which the issues were the same as in the case before him."). The same "matter in controversy" must be involved, regardless of whether the same lawsuit is involved. *In re O'Connor*, 92 S.W.3d at 448–49 ("By its own terms, rule 18b(1)(a) is not limited to disqualifying a trial judge only when the 'same lawsuit' is involved. Rather, in plain language, rule 18b(1)(a) requires disqualification when the same 'matter in controversy' is involved.") (citing TEX.R. CIV. P. 18b(1)(a)). However, the "fact that the two suits might have some facts in common" alone does not mean that they concern the same "matter in controversy." *Dixie Carriers, Inc. v. Channel Fueling Serv., Inc.*, 669 F.Supp. 150, 152 (E.D.Tex.1987) (referring to similar federal rule).

Here, no one disputes that Judge Magre was a partner at the law firm when the law firm represented Alcoa in the Whatley and

---

3. Similarly, in federal courts, a judge must disqualify himself "where in private practice he served as a lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter." 28 U.S.C. § 455(b)(2). The "deliberate choice by congress demonstrates an intent that the words 'matter in controversy' mean something other than what we commonly refer to as a 'case' ... so we do not rely on this technical distinction." *Little Rock Sch. Dist. v. Armstrong*, 359 F.3d 957, 960 (8th Cir. 2004). The federal standard that a judge must "disqualify himself in any proceeding in which his impartiality might reasonably be questioned—is established when a reasonable person, knowing the relevant facts, would expect that a judge knew of circumstances creating an appearance of partiality, notwithstanding a finding that the judge was not actually conscious of those circumstances." *Liljeberg v. Health Serv. Acquisition Corp.*, 486 U.S. 847, 848, 108 S.Ct. 2194, 2196, 100 L.Ed.2d 855 (1988). However, "a judge's prior representation of a witness or a party in an unrelated matter does not automatically require disqualification." *David v. City of Denver*, 101 F.3d 1344, 1351 (10th Cir.1996) (citing *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir.1992)). Where a case "involves remote, contingent, indirect or speculative interests, disqualification is not required." *Lovaglia*, 954 F.2d at 815 (referring to federal rule).

Cavitt asbestos lawsuits. Accordingly, Judge Magre is vicariously disqualified from sitting in the underlying lawsuit if the firm previously represented Alcoa concerning the same "matter in controversy." *See In re O'Connor,* 92 S.W.3d at 448. Thus, the critical question is whether the matter now before Judge Magre involves the same matter in controversy as did the Whatley or Cavitt lawsuits. *See id.* at 449 ("Thus, the issue here is whether the divorce and modification proceedings involved the 'same matter in controversy.'").

The Wilhites argue that the underlying lawsuit concerns the same matter in controversy as did the Whatley and Cavitt lawsuits because all of the lawsuits involve claims of asbestos exposure at Alcoa plants and, specifically, Edward Wilhite and Glen Whatley worked at the Alcoa Rockdale plant during the same approximate time period. The Wilhites assert that "the pleadings in all three lawsuits include negligence claims and intentional tort claims which raise the following issues: (1) whether asbestos exposure poses a health risk; and, (2) whether and when Alcoa knew that asbestos exposure poses a health risk." Alcoa filed a general denial in all three suits, contesting the allegations that asbestos exposure posed health risks and Alcoa had knowledge of such health risks. Also, Alcoa pleaded the same affirmative defense in all three lawsuits—that the plaintiffs' claims are barred by the Workers' Compensation Act.

The Whatley and Wilhite lawsuits share many similarities. First, both cases involve the issue of whether Alcoa knew of the risk of harm posed by asbestos exposure. The Whatley plaintiffs alleged,

Specific intentional acts and acts constituting negligence committed by the Alcoa defendants that proximately caused Plaintiff's injuries and damages resulting from the Decedent's death include: ... Failure to provide adequate safety measures and protection against deadly and life-threatening asbestos dust, all despite Defendant's knowledge of the extreme risk of harm inherent to asbestos exposure.

The Wilhites allege,

Alcoa, Inc., knew of the serious health hazards, including asbestosis, lung cancer, and death resulting therefrom, associated with asbestos exposure, at least as early as 1955.

Second, both cases involve the issues of whether Alcoa failed to warn its employees about the hazards of asbestos exposure and failed to ensure a safe work environment. The Whatley plaintiffs alleged,

The Defendants failed to properly remove and/or abate said asbestos at this facility during the time Decedent was employed there .... [Additionally, Alcoa failed] to provide safe equipment for Decedent to use ... [failed] to adequately warn Decedent of the inherent dangers of asbestos contamination ... [and failed] to provide Decedent a safe place to work....

The Wilhites allege,

Alcoa, Inc. took absolutely no action to warn employees such as Edward Wilhite of these serious health hazards and in fact, made a deliberate and calculated choice to keep this known information from its employees. Furthermore, Alcoa, Inc. intentionally failed to implement and follow the few policies and procedures it finally instituted in the 1970s to protect employees such as Edward Wilhite from health hazards related to asbestos exposure, even though Alcoa, Inc. was required to do so by state and federal law, and even though at the corporate level, Alcoa, Inc. knew that its local plants, including the Rockdale plant, were not following asbestos regulations and internal policies related

to asbestos exposure. Alcoa, Inc. intentionally chose to maintain unsafe working conditions at the Rockdale plant. . . .

Third, both cases involve the issue of whether the plaintiffs' mesothelioma was proximately caused by exposure to asbestos at the Rockdale plant. The Whatleys alleged,

> In particular, Plaintiff would show that the Alcoa Defendants demonstrated such an entire want of care as to establish that their acts and omissions were the result of actual conscious indifference to the rights, safety, and welfare of the Decedent, and that such intentional acts and omissions proximately caused the Decedent's death.

The Wilhites allege,

> Alcoa, Inc.'s intentional conduct resulted in Edward Wilhite's asbestos-related injuries, including mesothelioma, and these injuries are intentional in nature.

Fourth, both cases involve the issue of whether Alcoa knew or should have known that its actions would cause injury or death. The Whatleys alleged:

> The Defendants knew or should have known that its individual actions would combine to cause the injuries and/or deaths of Plaintiff's Decedent.

The Wilhites allege,

> Alcoa, Inc., knew with a substantial certainty that employees such as Edward Wilhite would be exposed to asbestos through their job duties; and knew with a substantial certainty that employees such as Edward Wilhite would contract an asbestos related illness, including mesothelioma, by reason of their job and job duties at the Rockdale location. In fact, based on the extent of Alcoa, Inc.'s knowledge of the health hazards of asbestos exposure and the ubiquitous use of asbestos during Edward Wilhite's

years of employment, it is impossible that Alcoa, Inc. was not substantially certain of these facts.

Finally, the plaintiffs in both suits alleged that Alcoa acted with intent, malice, or both. The Whatleys alleged,

> The actions and omissions of all Defendants as specifically alleged hereinabove, whether taken separately or together, were of such a character as to constitute a pattern or practice of intentional wrongful conduct and/or malice resulting in damages, injuries and/or death to the Plaintiff's Decedent.

The Wilhites allege,

> Because Alcoa, Inc., was substantially certain . . . that an employee such as Edward Wilhite would contract an asbestos-related illness, including mesothelioma, Alcoa, Inc.'s actions rise to the level of an intentional tort.

The reasoning of *In re O'Connor* is applicable here. O'Connor, the ex-wife of O'Brian, was first represented by Kyle Hawthorne when the trial court ordered temporary orders regarding the custody of O'Connor's and O'Brian's child. *In re O'Connor*, 92 S.W.3d at 447. In its temporary orders, the trial court appointed O'Brian as sole managing conservator, with primary custody and the exclusive right to determine the child's residence. *Id.* O'Connor's attorney-client relationship with Hawthorne then ended. *Id.* O'Connor later petitioned to increase her time periods of possession of the child and to have the right to determine the child's residence. *Id.* Judge Michel, a former law partner of Hawthorne, presided over the modification proceeding. *Id.* O'Connor moved to disqualify Judge Michel under Rule 18b(1)(a). *Id.* at 448. O'Connor contended that, because both of the proceedings involved possession of the child, they concerned the same "matter in controversy." *Id.* O'Brian asserted that

Rule 18(1)(a) was inapplicable because it applies only when the issues in the two lawsuits are identical. *Id.* The supreme court pointed out that, when assessing disqualification, whether two proceedings share the same matter in controversy is determinative, not whether each proceeding involved the same lawsuit. *Id.* at 449. Because the temporary orders and modification proceeding both dealt with the same matter in controversy—"custody, visitation, and the right to determine the child's residence"—Judge Michel was disqualified. *Id.* at 449–50. Although the lawsuits were different, the judge was disqualified because the same matter in controversy was involved. *Id.*

Here, likewise, the underlying lawsuit and the Whatley lawsuit are not identical. However, they concern the same matter in controversy, which involves the same defendant in similar asbestos litigation stemming from asbestos exposure at the same location over a significant, overlapping period of time. *Id.* at 449. The underlying lawsuit and the Whatley lawsuit each involve the plaintiffs' similar claims that they were exposed to asbestos by Alcoa at the same plant during the same approximate time period, that asbestos poses a health risk, and that Alcoa was aware of the health risk. Specifically, Whatley worked at Alcoa's Rockdale plant from 1954 to 1990, and Wilhite worked there from 1955 to 1982.

Accordingly, I would hold that the underlying lawsuit and the Whatley suit involve the same matter in controversy. Both lawsuits share (1) similar essential facts leading up to the alleged asbestos exposure by the same company at the same location during the same period of time, (2) similar causes of action, and (3) similar responses and defenses by Alcoa. *Id.* Because the Whatley suit involved the same matter in controversy currently at issue in the underlying suit, I would further hold that Judge Magre is disqualified from sitting in the underlying suit and that mandamus relief should be conditionally granted. *Id.*

The Texas Supreme Court has emphasized that

> [W]e must construe any ambiguity in the constitutional [disqualification] provision here to effectuate its purpose. Repeatedly, the people of Texas have insisted on constitutional protection against "counsel in the case" becoming a judge in the case[.]

*Tesco Am.,* 221 S.W.3d at 554. Here, the En Banc Court holding eviscerates the constitutional protection. To hold that two lawsuits do not involve the same "matter in controversy" merely because they concern different plaintiffs who are "strangers" to each other and not "legally joined in their lawsuits," their injuries do not arise out of the same incident, and they did not sue the same co-defendants is inconsistent with the Texas Supreme Court's emphasis on the meaning of "matter in controversy" and its broad interpretation as something encompassing more than a "case" for purposes of disqualification. *See In re O'Connor,* 92 S.W.3d at 449.

As recognized by the supreme court, the vanquishing power of vicarious disqualification is of serious concern. *Tesco Am.,* 221 S.W.3d at 554. Here, however, as in *Tesco American,* "no supine surprise was sprung" on the defendant. *See id.* None know better of the previous representation of Alcoa by the trial judge's former law firm than Alcoa. *See id.*